IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID A. SPEER,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      1:18CV276
                                   )
ANDREW SAUL,                       )
Commissioner of Social Security,[1])
                                   )
            Defendant.             )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff David A. Speer ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits on January 3, 2013, alleging a disability onset date of November 22, 2012. (Tr. at 30.)[2] His application

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #6]. Plaintiff also applied for Supplemental Security Income ("SSI"), but that application was denied due to income ineligibility. (See Tr. at 150-61.) Plaintiff's application for DIB does not appear in the record.

was denied initially (Tr. at 89-100, 132-35) and upon reconsideration (Tr. at 101-11, 138-45). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (See Tr. at 30.) On November 17, 2014, Plaintiff, along with his non-attorney representative and an impartial vocational expert ("VE"), attended the subsequent hearing. (Tr. at 46-65.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 112-23), and, on July 7, 2016, the Appeals Council granted Plaintiff's request for review of the decision, correcting Plaintiff's date last insured for DIB from December 31, 2014, to December 31, 2015, and remanding the case for further administrative proceedings, to include reevaluation of the opinion of treating physician Dr. David E. Strom (Tr. at 128-31). On May 12, 2017, Plaintiff, his non-attorney representative, and another VE attended a second hearing before the same ALJ. (Tr. at 66-88.) The ALJ thereafter issued a decision finding Plaintiff not disabled (Tr. at 27-40), and, on February 5, 2018, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6, 258-60, 331-32).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the

2

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ("RFC")." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 32.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease, status post open reduction internal fixation, left distal tibia fracture; hypertension, history of diabetes mellitus and osteoarthritis.

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

(Id.)  The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing.  (Tr. at 33.)  Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with further limitations.  Specifically, the ALJ found that Plaintiff can

> occasionally climb ladders and occasionally balance.  [Plaintiff] should avoid concentrated exposure to hazards (heights).

(Id.)  Under step four of the analysis, the ALJ determined that Plaintiff could not perform his past relevant work.  (Tr. at 38.)  However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the VE regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled.  (Tr. at 39-40.)

Plaintiff now raises three challenges to the ALJ's decision.  First, Plaintiff argues that "the ALJ disregarded important evidence and the law" and did "not show good reasons for rejecting treating sources' opinions and [Plaintiff's] testimony."  (Pl.'s Br. [Doc. #11] at 9.)  Second, Plaintiff contends that the ALJ failed to "make a clear, well-explained finding about [Plaintiff's] need for [a] cane."  (Id. at 21-22.)  Third, Plaintiff asserts that "the ALJ failed to evaluate [Plaintiff's] obesity."  (Id. at 23.)  After a careful review of the record, the Court agrees that the ALJ's failure to properly address Plaintiff's need for a cane merits remand.  In light of this finding, the Court need not consider Plaintiff's additional contentions at this time.

Plaintiff's contentions arise out of an injury he suffered on November 22, 2012, when he fell off a roof and fractured his tibia and injured his ankle.  He underwent several surgeries to his ankle, and although his ankle healed, it remained rotated or otherwise deformed,

6

resulting in his left leg being several centimeters shorter than his right. (See, e.g., Tr. at 564.)[5]

Plaintiff faults the ALJ for disregarding his testimony that he spent nearly two years on crutches following his injury, that he had been using the cane since giving up the crutches, and that he was still using the cane in 2017, even to get around the house. (Pl.'s Br. at 21-22 (citing Tr. at 53-54, 75-78).) Plaintiff notes that Dave N. Buckland, PA-C, documented Plaintiff's use of a cane numerous times in the record. (Id. at 21 (citing Tr. at 553, 559-60, 562, 564, 578, 580, 586).) Plaintiff further contends that the ALJ failed to "make a clear, well-explained finding about [Plaintiff's] need for the cane" and instead "evaded the issue" and just "recited some legal language" from the definition of 'inability to ambulate effectively' in the Listings, concluding that Plaintiff "does not use a walker, two crutches or two canes." (Id. at 22 (citing Tr. at 37); see also 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 1.00.B.2.b(1), 1.02, 1.03, 1.04, 1.05, 1.06 (2017).) Plaintiff notes that "the ALJ [n]ever claimed [Plaintiff] does not use one cane" and [n]ever acknowledged the vocational expert testimony that use of one cane, with the

---

[5] Plaintiff's medical records later note that Plaintiff:
>Had a fall with a compound fracture with [tri]malleolar fracture of the left ankle. He had [it] surgically repaired. He continues with chronic pain.
>. . . .
>Left leg length from iliac crest to calcaneus was 96 cm from inferior patellar pole to calcaneus was 42 cm right leg length from right iliac crest to calcaneus was 100.5 cm the leg length from the inferior patellar pole to the calcaneus on the right was 46.5 cm there is a leg disk leg length discrepancy of 4.5 cm on the left it mainly appears to be from the fracture of the ankle. He has decreased range of motion he has no dorsiflexion he has no movement of the Achilles. There is no inversion or eversion of the foot. It is frozen in place. His toes are mobile on plantar flexion but no dorsiflexion.
>. . . .
>Open trimalleolar fracture – Established (worsening) – Oxycodone refilled. Pt was counseled on potential side effects and safe usage, including potential for abuse. Patient has severe deformity left ankle. He has been followed by Dr. Strom who recommends permanent disability. I strongly support it also especially in light of the chronic degenerative disc disease and chronic pain; non-union as well as the new onset diabetes. Because of his impaired gait he does require the use of a assisted walking device in the form of a cane. He does have a 4.5 cm left leg length discrepancy with documented today.

(Tr. at 562-64 (August 4, 2016).)

ALJ's other RFC restrictions, means a person cannot do a significant number of jobs." (Id. (referencing Tr. at 86).)

"The requirement to use a hand-held assistive device may . . . impact [a claimant's] functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Part 404, Subpt. P, App'x 1, § 1.00(J)(4). Accordingly, an ALJ must consider the impact of a "medically required" hand-held assistive device on a claimant's RFC. See McLaughlin v. Colvin, No. 1:12CV621, 2014 WL 12573323, at *2 (M.D.N.C. July 25, 2014); Social Security Ruling 96-6p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work - Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185, at *7 (July 2, 1996) ("SSR 96-9p").

SSR 96-9p explains the impact of an assistive device on an RFC for sedentary work, and courts within this circuit have applied this ruling "to the light occupational base as well, since it involves even greater lifting than sedentary work. . . . Additionally, a plaintiff always bears the burden of proving his RFC, and therefore the standards in SSR 96-9p can be useful in determining if a plaintiff met that burden." Timmons v. Colvin, No. 3:12CV609, 2013 WL 4775131, at *8 (W.D.N.C. Sept. 5, 2013). Notably, SSR 96-9p provides the following guidance:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The [ALJ] must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

8

SSR 96-9p, 1996 WL 374185, at *7.

Here, the ALJ's consideration of Plaintiff's need for a cane consisted of the following analysis:

> [Plaintiff] indicated that he uses a cane to ambulate. While [Plaintiff] had occasions of irregular gait, typically his gait, station and ambulation was [sic] normal. He had no strength, sensory or reflex deficits. He had no acute office visits, emergency room visits or inpatient visits secondary to a fall since 2012 when he fell while [sic] off a house while working. The radiology reports showed mild post-traumatic ankle arthritis but [Plaintiff] had no ankle instability. [Plaintiff] had no diabetic complications that would exacerbate his ability to ambulate i.e., peripheral neuropathy. The evidence of record does not support the conclusion that [Plaintiff's] impairment interferes seriously with his ability to initiate, sustain or complete activities or sustain a reasonable walking pace over a sufficient distance to carry out activities of daily living or inability to walk a block at a reasonable pace on a rough or uneven surface. [Plaintiff] does not use a walker, two crutches or two canes.

(Tr. at 37.) The ALJ's above-quoted analysis falls short in two respects.

First, and most significantly, the ALJ neglected to assess PA-C Buckland's opinion, offered on July 9, 2015, that "because of [Plaintiff's] impaired gait he does require the use of a[n] assisted walking device in the form of a cane." (Tr. at 580 (emphasis added).) This assessment repeats throughout the record, including August 2016 (Tr. at 564), November 2016 (Tr. at 560), and February 2017 (Tr. at 553). Although at the time Plaintiff filed his claims, PA-C Buckland did not qualify as an "acceptable medical source" under the regulations, see 20 C.F.R. § 404.15(a)(8) (including physicians assistants as acceptable medical sources but only for claims filed on or after March 27, 2017), his opinion was still entitled to consideration and weighing by the ALJ, see Social Security Ruling 06–03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and

9

Nongovernmental Agencies, 2006 WL 2329939, at *3, 4 (Aug. 9, 2006) ("SSR 06–03p") (noting that "[o]pinions from [ ] medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects" and further noting that "the factors in 20 [C.F.R. §] 404.1527(d) . . . can be applied to opinion evidence from 'other sources.'").[6] PA-C Buckland's opinion is supported by his observations on numerous occasions throughout the relevant period in this case that Plaintiff limped, walked with an irregular gait, and/or waddled. (See Tr. at 491, 494, 523, 526, 583, 590.) The ALJ's failure to evaluate that opinion renders his analysis regarding Plaintiff's need for a cane unsupported by substantial evidence.[7]

Second, as Plaintiff argues, the ALJ conflated his evaluation of whether Plaintiff's ankle impairment met or equaled any listings with his obligation to assess the medical necessity of Plaintiff's cane. The latter half of the ALJ's above-quoted analysis recites from the definition of "inability to ambulate effectively" contained in the introduction to the musculoskeletal listings. (See Tr. at 37; see also 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B.2.b(1) (2017).) Under Listing 1.00,

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a

---

[6] The Court notes that on March 27, 2017, SSR 06-3p was rescinded in connection with the new regulations applicable to claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298, at *2 (Mar. 27, 2017). Because the claim in the present case was filed in 2013, the Court has analyzed Plaintiff's claims pursuant to the Ruling in effect at that time.

[7] Indeed, as noted by Plaintiff, the ALJ's decision appears not to acknowledge or address the ankle deformity reflected in the record. In the decision, the ALJ appears to broadly discount any contentions regarding Plaintiff's ankle based on the records reflecting the fracture had "healed," but without addressing the records reflecting that a deformity remained, with associated pain, misalignment, and a 4.5 cm leg length differential as a result, which affected Plaintiff's ability to walk and balance and raised the need for the cane.

hand-held assistive device(s) that limits the functioning of both upper extremities.

However, an "inability to ambulate effectively" is a significant requirement of five musculoskeletal listings which, if met or equaled, establish per se disability regardless of age, education, work experience, or RFC, but such a showing is certainly not required to demonstrate the (typically) less dispositive matter of the medical necessity of a cane. Thus, the ALJ's findings would support the conclusion that Plaintiff did not meet the Listings, but these findings did not resolve the question of Plaintiff's need for the cane.

Moreover, the ALJ's error in this regard is not harmless. The VE testified that, if an individual with Plaintiff's RFC had to use a cane even just for balance (let alone for ambulation), no jobs existed in significant numbers in the national economy that Plaintiff could perform. (See Tr. at 86.)[8] Accordingly, the ALJ's failure to properly analyze the medical

---

[8] In this regard, the testimony reflects the following questioning by the ALJ:
> Q. Assume that I find on the basis of the credible record before me for a full relevant period that the Claimant's demonstrated exertional impairments reflect the residual functional capacity – residual functional capacity for a full range of light work on a sustained basis. Assume further that he's demonstrated certain significant non-exertional impairments principally relating to degenerative disc disease, a status post ORIF of the left distal tibia fracture, hypertension, a history of diabetes, osteoarthritis which limits him to – which limits him to work requiring occasional climbing of ladders, avoid concentrated exposure to hazards, the heights, occasional balance. I'll note that he uses a cane for balance. Take into full account these non-exertional restriction [on] the Claimant's age, education, and prior relevant work experience, are there jobs existing in the several regions of the country that he could do with these limitations?
> A. There are only two and they're, like, not very significant numbers because of having the cane and having to use both hands, so I would say no.
> Q. Very well. The same impairments but without the use of a cane for balance are there jobs existing in the several regions of the country that he could do with these limitations?
> A. Yes. A cashier II . . . Housekeeper/cleaner . . . And a sales attendant. . . .
> . . . .
> Q. Comparing the hypothetical to the DOT are there any inconsistencies or anything that needs to be explained?
> A. No more than what I said earlier about having to have two hands for the jobs that were at the light level –
> Q. Very well.
> A. – because of the cane.

(Tr. at 87.)

11

necessity of Plaintiff's cane requires remand of this matter for further administrative proceedings.[9]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #15] should be DENIED, and Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security or Remanding the Cause for a Rehearing [Doc. #10] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 27th day of August, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[9] In light of this determination, the Court need not reach Plaintiff's remaining contentions. The Court does note, however, that the ALJ's analysis of the opinion evidence fails to address a critical portion of Dr. Strom's February 14, 2014 Medical Assessment of Ability to Do Work-Related Activities. Specifically, Dr. Strom opined that Plaintiff could lift and/or carry up to 10 pounds, could lift and/or carry a "very nominal amount" occasionally, could stand and/or walk a total of one hour in an 8-hour workday, and could sit a total of two to three hours in an 8-hour work day. (Tr. at 501-04.) Dr. Strom also included various postural limitations, limitations on the ability to reach, push, or pull, and environmental limitations. The ALJ addressed many of these limitations, and gave "some weight" to the opinion that Plaintiff could sit two to three hours in an 8-hour workday as "consistent with the residual functional capacity because with light work activity sitting occurs intermittently or about two hours in an 8-hour workday." (Tr. at 38.) However, the ALJ did not address Dr. Strom's opinion that Plaintiff could stand and/or walk only one hour in an 8-hour workday, and this limitation is critical to the determination of Plaintiff's ability to perform light work. Interestingly, the ALJ's prior decision in this case suffered the same deficiency, and the Appeals Council remanded the case to the ALJ to make this finding (Tr. at 129), but the ALJ's present decision still failed to address this issue.